AMY KARLIN (Bar No. 150016)
Interim Federal Public Defender
TAYLOR GEE (Bar No. 358203)
(E-Mail: Taylor_Gee@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
BENJAMIN AZARIAH SOUTHWORTH

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

BENJAMIN AZARIAH SOUTHWORTH,

Defendant.

Case No. 2:26-cr-00570-WLH

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S APPLICATION FOR BAIL REVIEW**

**Indictment: 09/02/2026**
**Pretrial Conference: 10/16/2026**
**Trial Date: 10/26/2026**

# TABLE OF CONTENTS

Page

INTRODUCTION AND PROCEDURAL HISTORY ........ 1

ARGUMENT ........ 2

Recent Ninth Circuit law strongly suggests that 18 USC § 871 is not a crime of violence under the categorical approach ........ 3

The government has not met its burden to show that there is a "serious" risk of flight under Section 3142(f)(2) and is not entitled to a detention hearing on that basis ........ 6

If the Court opens a detention hearing based solely on serious risk of flight, it may not consider community safety concerns when deciding whether to grant bond ........ 7

Even if 18 USC § 871 was a crime of violence, and a presumption of detention applies, Mr. Southworth can produce sufficient evidence to rebut that presumption ........ 8

CONCLUSION ........ 10

**TABLE OF AUTHORITIES**


Page(s)

**Federal Cases**

*United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992) .......... 7

*United States v. Ceja*, 23 F.4th 1218 (9th Cir. 2022) .......... 5

*United States v. Chen*, 820 F. Supp. 1205 (N.D. Cal. 1992) .......... 8

*United States v. Davis*, 588 U.S. 445 (2019) .......... 3

*United States v. De La Fuente*, 353 F.3d 766 (9th Cir. 2003) .......... 4

*United States v. Dillon*, 938 F.2d 1412 (1st Cir 1991) .......... 8

*United States v. Dominguez*, 783 F.2d 702 (7th Cir. 1986) .......... 2

*United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131 (D. Idaho 2023) .......... 6

*United States v. Gomez*, 165 F.4th 1199 (9th Cir. 2026)(en banc.) .......... 3, 4, 5

*United States v. Himler*, 797 F.2d 156 (3d Cir. 1986) .......... 7

*United States v. Marquez-Lobos*, 697 F.3d 759 (9th Cir. 2012)) .......... 4

*United States v. McCaleb*, 908 F.2d 176 (7th Cir.1990) .......... 4

*United States v. Mesher*, 707 F. Supp 1224 (D. Or. 1989) .......... 8

*United States v. Mieses-Casiano*, 161 F. Supp. 3d 166 (D.P.R. 2016) .......... 2

# TABLE OF AUTHORITIES

Page(s)

*United States v. Ploof*,
851 F.2d 7 (1st Cir. 1988) ..... 7

*United States v. Rodriguez-Gamboa*,
972 F.3d 1148 (9th Cir. 2020) ..... 5

*United States v. Santos*,
131 F.3d 16 (1st Cir.1997) ..... 4

*United States v. Soto*,
163 F.4th 1249 (9th Cir. 2026) ..... 5

*United States v. Thomas*,
667 F. Supp 727 (D. Or. 1987) ..... 8

*United States v. Twine*,
344 F.3d 987 (9th Cir. 2003) ..... 2, 7

*United States v. Williams*,
110 F.3d 50 (9th Cir. 1997) ..... 4

*Sessions v. Dimaya*,
584 U.S. 148 (2018) ..... 3

**Federal Statutes**

18 U.S.C. § 16(b) ..... 3

18 U.S.C. § 924(c) ..... 3

18 U.S.C. § 3156(a)(4) ..... 3

18 USC § 871 ..... *passim*

**State Statutes**

California Health & Safety Code § 11378 ..... 5

## I. INTRODUCTION AND PROCEDURAL HISTORY

Mr. Southworth has been a reliable employee of Water & Power Community Credit Union for seven years. Ex. A. He lives in LA with a loving partner and has longstanding ties to the community. *Id.* at 2. If released on bond, he can return to his home, his job, and his family. *Id.* at 3.

For years, Mr. Southworth hosted a podcast on faith and sexuality, produced by the same company that developed *RuPaul's Drag Race*.[1] The podcast shut down in January of 2025, but Mr. Southworth continued his political commentary online. He has no history of violence, no history of mental illness, and no criminal convictions. Ex. A at 3-4. His only arrest, ever, was for a non-violent misdemeanor. *Id.* at 3. Mr. Southworth presented a significant surety package comprised of loved ones and friends who have known him for years. *Id.* at 3. This includes Charles Pablico-Fernandez, an attorney at McLane, Bednarski & Litt, who just completed a clerkship for a magistrate judge in this very district, and knows better than most the significance of agreeing to be a surety in a criminal matter. *Id.*

Mr. Southworth had his initial appearance on Thursday, September 3, 2026, and he was ordered detained. At the initial appearance, Mr. Southworth argued that Count One, Threats Against the President, was not a crime of violence, meaning the government was not entitled to a hearing under Section 3142(f)(1). The Court below rejected that argument, finding that the government was entitled to a hearing under Sections 3142(f)(1) and 3142(f)(2). The Court then disagreed with Pretrial Services' conclusion that there are a "combination of conditions [that] would reasonably assure the safety of the community and the defendant's appearance of future proceedings." Ex. A at 5. Instead, the below Court detained Mr. Southworth based on concerns for community safety. The defense filed a request for review by this Court.

[1] See, the "Yass, Jesus!" Podcast. https://www.worldofwonder.com/podcasts/. Accessed on 9/14/26.

## II. ARGUMENT

The defense files this supplemental brief to address a few legal issues at issue during Mr. Southworth's initial appearance:

- That 18 USC § 871 Threats Against the President is a not crime of violence, and therefore, the government is not entitled to a detention hearing under Section 3142(f)(1) and the presumption of detention under Section 3142(e)(3) does not apply either.
- That the "seriousness" of the charges and the possible consequences, on their own, does not stablish a "serious" risk of flight beyond the ordinary risk of non-appearance, and therefore the government is not entitled to a detention hearing under Section 3142(f)(2).
- If the government were entitled to a detention hearing under Section 3142(f)(2), under *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003), the Court cannot then consider danger to the community in that detention hearing.
- Even if a presumption of detention applies, the defendant can easily meet the "small" burden of production required to rebut that presumption.

Mr. Southworth maintains the position that because of the above issues, the government is not entitled to a detention hearing. Even if the government were entitled to a hearing under 3142(f)(2), *Twine* instructs that the court should then only consider flight in determining whether to detain Mr. Southworth, which in this case, can be easily mitigated by pre-trial terms and conditions.

But maybe most important of all: Even if the government is entitled to a detention hearing, and even if there is a presumption of detention, Mr. Southworth can easily rebut that presumption. The burden of production to rebut the presumption is not a heavy one to meet. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (emphasis added); *see also United States v. Mieses-Casiano*, 161 F. Supp. 3d 166, 168 (D.P.R. 2016) (the burden of production "the presumption imposes on the defendant . . .

*is not heavy*") (emphasis added). Mr. Southworth can offer significant sureties, proof of steady employment at a credit union, and deep ties to the community. He has no history of violence, mental health issues, or drug abuse. The government has offered no evidence that Mr. Southworth has taken any steps toward actually carrying out a violent act, and based on the alleged threats themselves and Mr. Southworth's track record as a political commentator online, it appears clear that Mr. Southworth never had any intent to do so. He would gladly agree to a condition barring use of social media, which appears to be the basis of much of the indictment. There are undoubtedly conditions that can reasonably assure Mr. Southworth's future appearances in court as well as the safety of the community.

## A. Recent Ninth Circuit law strongly suggests that 18 USC § 871 is not a crime of violence under the categorical approach

The Bail Review Act uses the common "elements" clause in defining a crime of violence, which asks whether an offense "has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another."[2] 18 U.S.C. § 3156(a)(4). To answer this question, Courts apply the "categorical approach," in which the facts of the case are irrelevant, and the focus is whether the elements meet the federal definition of a crime of violence. *United States v. Gomez,* 165 F.4th 1199*,* 1204 (9th Cir. 2026)(en banc.) "If, when conducting this examination, a court determines that the statute of conviction makes unlawful any conduct less culpable than that required to constitute a crime of violence, then there is

---

[2] The BRA also includes a "residual clause" for defining crimes of violence, which includes "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." While 18 USC § 871 may involve the threat of physical force, it does not involve a substantial risk that physical force is actually used. Even if it did, it appears doubtful that this residual clause is enforceable. The Supreme Court has invalidated similar residual clauses that use substantially similar language. *See*, *e.g.*, *United States v. Davis*, 588 U.S. 445 (2019) (invalidating residual clause relating to 18 U.S.C. § 924(c) enhancements); *Sessions v. Dimaya*, 584 U.S. 148 (2018) (invalidating residual clause relating to 18 U.S.C. § 16(b)).

'not a categorical match.'" *Id.* (citing *United States v. Begay*, 33 F.4th 1081, 1091 (9th Cir. 2022) (en banc)).

Under 18 USC § 871, it is a crime to knowingly and willfully threaten "to take the life of, kidnap, or to inflict bodily harm upon the President of the United States." Because 18 USC § 871 can include threats of a non-violent nature—namely, a threat to kidnap through deceit—it is not a crime of violence under the categorical approach.

The Ninth Circuit has in fact previously held that state kidnapping laws are not crimes of violence when they permit kidnapping by deceit rather than just force. *See, e.g.*, *United States v. Williams*, 110 F.3d 50, 52 (9th Cir. 1997) (holding that Oregon kidnapping was a crime of violence under the USSG's now-defunct residual clause, but not under the elements clause, because it "may be committed by deception, rather than force"); *United States v. Marquez-Lobos*, 697 F.3d 759, 763–64 (9th Cir. 2012) (Arizona kidnapping did not have the use of force as an element because it could be conducted by deception, or simply by keeping a minor without the parents' permission). Because kidnapping does not necessarily involve the use of force, the threat of kidnapping criminalized by § 871 does not necessarily involve the threatened use of force. The statute therefore criminalizes conduct that falls short of a crime of violence, and is thus not a categorical match.

At the initial appearance, the Government argued that § 871 is a crime of violence by citing *United States v. De La Fuente*, 353 F.3d 766 (9th Cir. 2003). Ex. B at 4:00-6:45. In *De La Fuente*, the Ninth Circuit determined that § 876(c) was a crime of violence, not § 871. However, as the Government pointed out, fn. 3 of that decision made reference to the First and Seventh Circuits holding that § 871 is a crime of violence. *United States v. Santos,* 131 F.3d 16, 21 (1st Cir.1997); *United States v. McCaleb,* 908 F.2d 176, 178 (7th Cir.1990).

//

//

//

But *De La Fuente* never considered the issue of kidnapping in regards to the categorical approach. It only ever considered a "threat to injure." *Id.* at 770. This omission is not much of a surprise—the law on "crimes of violence" has evolved significantly in the 23 years since *De La Fuente* was published. In fact, the two cases from sister circuits that *De La Fuente* cites rely on obsolete or erroneous law. In *Santos*, the court referenced facts alleged in the indictment to determine whether the defendant committed a crime of violence—an obviously improper analysis under the categorical approach. *See, United States v. Gomez,* 165 F.4th 1199*,* 1204 (9th Cir. 2026)(en banc.). While in *McCaleb*, the court incorrectly states that § 871 "requires that that the defendant knowingly mail a letter containing a threat to take the life of the President" without addressing that § 871 also criminalizes lesser threats. None of these decisions consider a threat to kidnap or explain why that component of the statute is irrelevant.

This is important, because even if *De La Fuente*, an § 876(c) case, was controlling precedent for § 871, the Ninth Circuit has made it clear that precedential decisions rejecting an argument that a statute is overbroad in one respect do not preclude future arguments that the statute is overbroad in a *different* respect. In *United States v. Soto*, the Ninth Circuit decided that California Health & Safety Code § 11378—prohibiting the sale of controlled substances including methamphetamine—was categorically a controlled substance offense for purposes of federal statutes and guidelines. *United States v. Soto*, 163 F.4th 1249 (9th Cir. 2026). It did so over the government's objection that categorical-approach challenges were foreclosed by at least two prior published opinions in which the Ninth Circuit had conclusively rejected different overbreadth arguments. *See United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1151–52 (9th Cir. 2020) (concluding no such isomers existed); *United States v. Ceja*, 23 F.4th 1218, 1226–27 (9th Cir. 2022); *Soto*, 163 F.4th at 1255 & n.2 ("[W]e resolve the predicate legal issues in favor of Defendants," including "whether [*Rodriguez-Gamboa*] and similar cases conclusively hold that California's definition of methamphetamine is not broader than

the federal definition and therefore control the outcome of these appeals."); *see also id.* at 1251 (certifying the merits question to the California Supreme Court).

For these reasons, Ninth Circuit precedent leads to the conclusion that § 871 is not a crime of violence under the categorical approach. If so, the government is not entitled to a detention hearing under Section 3142(f)(1), and a presumption of detention under Section 3142(e)(3) does not apply either. The government would need to meet their burden to show they are entitled to a detention hearing under Section 3142(f)(2) instead.

**B. The government has not met its burden to show that there is a "serious" risk of flight under Section 3142(f)(2) and is not entitled to a detention hearing on that basis**

If 18 USC § 871 is not a crime of violence, the government must show that there is a serious risk of flight in order to be entitled to a detention hearing under Section 3142(f)(2). Dangerousness is not a consideration at this point in the analysis. *See*, Section 3142(f)(2).

In order to satisfy Section 3142(f)(2), the Court must find that there is a serious risk of flight, and not just the ordinary risk of non-appearance associated with every criminal case. *See*, *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131 (D. Idaho 2023)("A 'serious risk of flight' under § 3142(f)(2) is a great risk—beyond average—that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision.")

To the government's credit, during the initial appearance, it acknowledged the limited degree to which Mr. Southworth is a flight risk:

> "Your honor, we believe the seriousness of these charges demonstrate to some degree a flight risk, although I do acknowledge that Mr. Southworth does live here, does have ties to the community. I do not want to overstate our flight risk case."

Ex. B at 15:20.

This mirrored USPPSO's own conclusion that a suitable bond along with conditions of release could mitigate concerns for nonappearance. Ex. A at 5. Nor did the below Court ultimately base its eventual detention order on risk of nonappearance, instead only citing a danger to the community. Ex. C at 4:45.

The "seriousness" of the charges do not, on their own, create a "serious risk of flight" beyond the ordinary. If anything, without any other risk factors, and so many mitigating factors in play such as steady employment, community ties, and substantial sureties, Mr. Southworth appears to a significantly below-average flight risk. In fact, relative to most federal charges, 18 USC § 871 creates relatively little criminal exposure. There is no mandatory minimum and the Base Offense Level of the Sentencing Guidelines is 12. See, 18 USC § 871; U.S.S.G. §2A6.1. Given that Mr. Southworth has no criminal history points, even if he were to plead guilty today, a low-custody or no-custody sentence is a real possibility.

**1. If the Court opens a detention hearing based solely on serious risk of flight, it may not consider community safety concerns when deciding whether to grant bond**

If the Court finds that the government is entitled to a hearing premised solely on serious risk of flight, then the Court must determine which factors the BRA permits it to consider when determining whether to detain Mr. Southworth. *United States v. Twine* is binding on this question. 344 F.3d 987 (9th Cir. 2003). In *Twine*, the Ninth Circuit aligned itself with three of our sister circuits on an answer: that the statutory basis of a detention hearing limits the factors that a court may consider in determining whether to detain a defendant. *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988); *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992)). All three of these opinions directly address the question of whether the basis for a detention order must be tied to the basis for the detention hearing itself, and all three concluded that it must. The *Twine* panel aligned the Ninth Circuit with this

understanding of the BRA. *Twine*, 344 F.3d at 987. ("Our interpretation is in accord with our sister circuits who have ruled on this issue." (citing *Himler*, *Ploof*, and *Byrd*)).

As a result, if the government is entitled to a detention hearing premised solely on serious risk of flight, then the hearing should concern whether the accused should be detained due to flight risks alone. The Court may only consider community safety as a basis for detention if the government is entitled to a hearing on a Section 3142(f)(1) basis.

In this instance, for the reasons described in the previous section, there are clearly conditions that can mitigate the risk of non-appearance. Mr. Southworth maintained the same employment for over seven years, has lived in the district for years, and can offer significant sureties. He has no history of non-appearance. There are surely a set of terms and conditions that can reasonably assure Mr. Southworth's appearance at future hearings.

### C. Even if 18 USC § 871 was a crime of violence, and a presumption of detention applies, Mr. Southworth can produce sufficient evidence to rebut that presumption

A presumption of detention under Section 3142(e)(3) is rebuttable by statute. While the presumption does shift the burden of production of evidence to the defendant, the burden of persuasion remains with the government. *United States v. Mesher,* 707 F. Supp 1224, 1225 (D. Or. 1989).

The burden placed on the defendant to rebut the presumption is "small," and not a heavy one to meet. *United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992)(citing *United States v. Dillon,* 938 F.2d 1412, 1416 (1st Cir 1991)). The defendant need only produce "some credible evidence forming a basis for his contention that he will appear and not pose a threat to the community in order to rebut the presumption." *United States v. Thomas,* 667 F. Supp 727, 728 (D. Or. 1987); *Dillon,* 938 F.2d at 1416.

//

As alluded to earlier in this brief, Mr. Southworth can provide more than just the "some evidence" to meet the "small burden" required to rebut a presumption of detention. Mr. Southworth has verified, long-term employment with a credit union. Friends and loved ones have offered themselves as sureties, including a lawyer who recently finished a clerkship in the Central District of California. Even Mr. Southworth's extremely limited criminal history suggests that Mr. Southworth can be trusted on pre-trial release—his only arrest is for a non-violent misdemeanor which was dismissed upon successfully completing diversion, proving he can comply with court conditions.

At the initial appearance, the government cited *United States v. Kane*, an unreported case from the Western District of Washington as an example in which an alleged threat, unaccompanied by violence, is sufficient for the Court to detain a defendant on the basis of community safety. See, No. 3:20-MJ-5054 TLF, 2020 WL 1433766 (W.D. Wash. Mar. 24, 2020); Ex. C at 00:30. In *Kane*, the defendant had made threats against a child protective services worker involved in the case of his 13-year-old daughter. 3:20-MJ-5054 at Dkt. 8. The defendant also had a pending warrant based on his attempt to illegally purchase a firearm by making false statements about not having a prior conviction that would prohibit the possession of a firearm. *United States v. Kane* at 4. In fact, the defendant had various social media posts showing off his possession and use of firearms. *Id.* Finally, the government had produced text messages the defendant sent to a third party the day before his arrest, expressing his intentions to flee the state. *Id.*

The case before the Court could not be more different than *Kane.* Mr. Southworth has no convictions prohibiting him from possessing a firearm, but regardless, he does not own or possess any. There are no pending warrants, he has made no false statements, and the government has produced no evidence that Mr. Southworth intends to flee. There is no evidence of any kind that Mr. Southworth has any intention, capacity, or specific plan to carry out any threat against the president.

The "alleged threats" are largely online, non-specific, and rhetorical. The government's own Exhibit 1, proffered at the initial appearance to show Mr. Southworth's dangerousness, is a perfect example.[3]

The government argued at the detention hearing that Mr. Southworth's intention, or lack thereof, to carry out any threats is irrelevant to his guilt. But that is not the issue before the court. The question the Court must answer is if Mr. Southworth is genuinely a danger to the community, or if there are conditions that can reasonably assure the community's safety. Whether these "threats" are serious, empty, or rhetorical words are absolutely relevant to that question. The words themselves, the context of Mr. Southworth's history as a political commentator online, and the total lack of any evidence that Mr. Southworth intended to actually attack the President or anyone else, strongly cut against the government's argument for detention.

## III. CONCLUSION

Mr. Southworth is a long-time customer service representative at a community credit union, with no criminal convictions, no history of violence, no mental health issues, and significant sureties. He used to host a political podcast that shut down in 2024 but maintains an online presence that the government argues crosses the line from free speech into criminal threats. The parties will have ample time to argue whether that is the case. But even if the government is entitled to a detention hearing or a presumption of detention exists—which is in doubt—Mr. Southworth has produced sufficient evidence to rebut that presumption.

//

//

[3] The government proffered a screenshot of the following webpage, which shows a sticker for sale on a website allegedly associated with Mr. Southworth. The item's description states, "It's not a threat. It's a promise to dismantle and hold every one of Trump's evil deeds accountable." https://www.holymenace.com/shop/p/kill-trump-sticker-sheet

There is certainly a combination of conditions that will reasonably assure community safety and future appearances.

Respectfully submitted,

AMY KARLIN
Deputy Federal Public Defender

DATED: September 14, 2026

By */s/ Taylor Gee*

TAYLOR GEE
Deputy Federal Public Defender
Attorney for BENJAMIN AZARIAH SOUTHWORTH